***********
This case was initially heard before the deputy commissioner in Selma, North Carolina on 21 February 2002. Thereafter, the parties were permitted sixty days to complete the medical evidence. The parties deposed D. Allen Hayes, M.D. and Leigh Ibach, M.D. after which they were allowed a period of thirty days to submit a brief and a proposed opinion and award. Deputy Commissioner Garner then rendered his decision awarding benefits. The award by Deputy Commissioner Edward Garner, Jr., filed 5 June 2002 is being reviewed by the Full Commission, pursuant to N.C. Gen. Stat. § 97-85, upon application by Defendant.
The undersigned have reviewed the Award based upon the record of the proceedings
Full Commission Opinion Award I.C. No. 821848 before the deputy commissioner. The Full Commission, in its discretion, and with the consent of the parties has determined that there are good grounds in this case to amend the facts, conclusions, and award reached by the deputy commissioner.
On 27 February 1998, the defendant filed an Industrial Commission Form 60, Employer's Admission of Employee's Right to Compensation Pursuant to N.C. Gen. Stat. § 97-18(b). The admission contained therein is hereby incorporated by reference. In addition, the undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties in the Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the Commission has jurisdiction over the parties and of the subject matter.
2. The parties stipulate that plaintiffs average weekly wage at the time of the injury was $427.46, which yields a compensation rate of $284.99 per week.
3. It is stipulated that on 19 February 1998, plaintiff sustained a compensable injury that caused her to experience difficulty breathing, which the defendant accepted as compensable as evidenced by the Form 60 filed in this matter 27 February 1998.
4. It is stipulated that in the time period between plaintiffs return to work in 1998 and the date of the hearing, plaintiff has lost 184 hours of work as a result of her lung condition. Plaintiff has not been paid compensation for this lost time but was paid with sick leave and vacation pay.
5. The following documentary exhibits are stipulated into evidence by the parties:
(a) All of plaintiff's medical records, including rehabilitation records.
(b) All Industrial Commission Forms and Pleadings.
(c) MSDS for products used at the place of employment.
(d) All of plaintiff's employment records, including time sheets, from defendant.
(e) Employer's safety memorandum dated 16 March 1998.
 ***********
Based upon all of the competent evidence of the record and the reasonable inferences that may be made thereon, and with the parties' consent, the undersigned make the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was fifty-three years old. She graduated from high school. She has had no additional education. Her work experience prior to beginning work for defendant was clerical in nature. She is presently employed by defendant in its accounts receivable department. Plaintiff works in a building located on the North Carolina State Fairgrounds.
2. Plaintiff has never smoked cigarettes or lived with any one who smokes cigarettes. Prior to February 1998, plaintiff had never been hospitalized or treated for any kind of lung condition. She had never taken medication for treatment of any lung condition. The only illness she has experienced involving her lungs was associated with the common cold.
3. Plaintiff is allergic to seafood and bee stings. If plaintiff eats fish or if she is stung by a bee she experiences difficulty breathing. Plaintiff has been stung by a bee once in her life. She has eaten food containing fish only once. Both of these incidents occurred years ago.
4. On 19 February 1998, a custodial employee of defendant was mixing cleaning solutions/chemicals in the vicinity of plaintiff's desk where she was working. The cleaning solutions/chemicals created a very strong chemical odor in plaintiff's work area. Upon smelling the chemicals, plaintiff had a reaction which caused her to be unable to catch her breath. The cleaning solutions/chemicals being used by the employee are known respiratory irritants.
5. As soon as she began experiencing trouble breathing, plaintiff left the building with the assistance of a co-worker. Even after leaving the building she continued gasping for air and her co-worker transported plaintiff directly from her workplace to Rex Hospital. Plaintiff was treated in the emergency room and was released and referred to her family physician, Dr. lbach, where she began receiving treatment.
6. Plaintiff was excused from work and received total disability compensation from 19 February 1998 through 1 June 1998. During that time, Dr. lbach referred her to Dr. D. Allen Hayes, a board certified pulmonologist. Plaintiff was referred to Dr. Hayes due to persistent coughing and shortness of breath. Plaintiff had never experienced similar symptoms prior to February 1998.
7. Plaintiff returned to work on a trial return to work basis in June 1998. She began working four hours per day. She eventually returned to work for eight hours per day. Even after returning to work, plaintiff periodically experienced flare-ups of the symptoms she experienced immediately following her exposure to chemicals in February 1998. At times, the flare-ups of her symptoms were sufficiently severe to cause her to be unable to work. From July 1998 through the date of the hearing, plaintiff's breathing difficulties caused her to be unable to work for a total of 184 hours. Plaintiff received no disability compensation for these absences. Defendant required plaintiff to charge these absences to her annual sick or vacation leave.
8. Despite having returned to work on a full-time basis, plaintiff continues to experience difficulty breathing. Her symptoms are triggered by exposure to anything with a strong odor, including perfumes, wood smoke, tobacco smoke, chemicals, and aerosol sprays. Plaintiff avoids persons in her workplace who smoke or who wear strong perfumes or colognes. Most of plaintiffs exposures to strong odors have occurred at work because she is able to control her environment at home and avoid environments where she is likely to be exposed to strong odors. The symptoms plaintiff experiences when exposed to strong odors are the same symptoms she experienced following her initial exposure to chemicals in February 1998.
9. As a result of her lung condition, plaintiff has altered her lifestyle. She avoids public places where she might be exposed to smoke or other strong odors. She avoids the use of chemicals in her home. She has to warn friends not to wear perfumes or colognes. She cannot go to public places where she may be exposed to respiratory irritants.
10. Plaintiff uses a number of prescription medications as treatment for her lung condition/breathing problems. Plaintiffs health insurance company pays for these medications. Other medical expenses plaintiff has incurred for treatment from Dr. Ibach remain unpaid.
11. Reactive airways dysfunction syndrome (RADS) is a respiratory illness that is caused by exposure to a respiratory irritant. The initial exposure to the irritant causes an immediate respiratory reaction, and thereafter, the person suffers from persistent symptoms including twitchy airways, cough, shortness of breath, chest tightness and congestion and abnormal changes in lung function that resemble asthma.
12. Plaintiff developed RADS as a result of her exposure to chemical irritants on 19 February 1998.
13. Plaintiffs RADS has caused her to alter her lifestyle. In addition, her RADS has significantly reduced her future employability because the kind and number of work environments in which she is able to work has been substantially reduced. She must work in an odor-free environment.
14. As a result of RADS, plaintiff has also developed depression and anxiety for which she has required and will continue to require treatment, including prescription medications.
15. Plaintiff's RADS is a permanent lung condition that affects both of her lungs. There is a substantial risk that plaintiff will require treatment for her RADS for the remainder of her life, including prescription medications. Plaintiff's lung condition stabilized and she was at maximum medical improvement in July 1998 when she returned to full time work.
16. The treatment plaintiff has received from Rex Ridge Internal Medicine since February 1998 has been reasonably necessary to treat and evaluate her RADS, depression, and anxiety.
17. The lungs are important internal organs for damage to which no compensation is payable under any subsection of N.C. Gen. Stat. § 97-31
other than subsection 24. The damage to plaintiffs lungs has significantly diminished her future earning capacity in that it has reduced the type of environments in which she is able to work. In addition, her permanent lung condition has caused her to have depression and anxiety, which further reduce her future earning capacity.
18. Disability has not yet been determined by Plaintiffs treating physicians. Pursuant to N.C. Gen Stat. § 8-46, Plaintiff has a life expectancy of 26.8 years. Over the remaining 26.8 years of her life expectancy, an award of $40,000.00 will compensate her less than $1,500.00 per year. Although $40,000.00 is the maximum amount that may be awarded pursuant to N.C. Gen. Stat. § 97-31(24) for the permanent damages to plaintiffs lungs, the sum of $1,500.00 per year is insufficient to compensate plaintiff for the significant reduction of her future earning capacity. Nonetheless, the undersigned's discretion is limited to awarding only $40,000.00.
19. Defendant's defense of plaintiff's claim was not based in stubborn, unfounded litigiousness.
 ***********
The foregoing Stipulations, Findings of Facts, and the parties' consent, engender to following:
 CONCLUSIONS OF LAW
1. On 19 February 1998, plaintiff contracted reactive airways dysfunction syndrome as a result of an accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of her reactive airways dysfunction syndrome, plaintiff developed depression and anxiety.
3. As a result of her injury, plaintiff is entitled to total disability compensation at the rate of $ 284.99 per week for 3.29 weeks. N.C. Gen. Stat. § 97-29.
4. For the permanent damage to both of her lungs, plaintiff is entitled to equitable compensation of $ 20,000.00 per lung. N.C. Gen. Stat. § 97-31(24).
5. Plaintiff is entitled to payment of all medical expenses, including future medical expenses, incurred for treatment of her lung disease, depression, and anxiety for so long as such examinations, evaluations, and treatments tend to affect a cure or provide relief. N.C. Gen. Stat. § 97-25.1.
6. The parties agree that this opinion and award cannot be appealed or reviewed, nor will the normal appeal time be allowed in determining when payment on the same will be subject to the late payment penalties of N.C. Gen Stat. § 97-18.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, and with the parties' consent, the undersigned enter the following:
 AWARD
1. Defendant shall pay plaintiff total disability compensation at the rate of $284.99 per week for 3.29 weeks for a total of $ 937.62. This amount shall be paid in a lump sum and shall be subject to the attorney's fee awarded in paragraph 4.
2. For the permanent damage to both of her lungs, defendant shall pay plaintiff equitable compensation of $ 20,000.00 per lung. This amount shall be paid in a lump sum and shall be subject to the attorney's fee awarded in paragraph 4.
3. Defendant shall pay all medical expenses, including future medical expenses, incurred by plaintiff for treatment of her lung disease, depression and anxiety for so long as such examinations, evaluations and treatments tend to affect a cure or provide relief.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiffs attorneys and shall be paid as follows: twenty-five percent of the lump sum due plaintiff in paragraph 1 and 2 of this Award shall be deducted from that amount and be paid directly to Scudder Hedrick. This amounts to an attorney's fees of $10,234.40.
5. Defendant shall pay the costs due the Commission.
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission hearing docket.
This 19th day of December 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONSENTED TO:
 S/____________________ Attorney for Plaintiff
 S/____________________ Attorney for Defendant